# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

Nº 05-CV-3242 (JFB) (ARL)
_____

WALTER HENNEBERGER, WALTER LIPINSKY, GLENDA SMITH, THOMAS TILLEY, AND DOUGLAS WIPPERMAN,

Plaintiffs,

VERSUS

THE COUNTY OF NASSAU, THOMAS R. SUOZZI, DAVID S. GREENE,

Defendants.

_____

MEMORANDUM AND ORDER
December 6, 2006
_____

JOSEPH F. BIANCO, District Judge:

Plaintiffs brought the instant action against their employer, the County of Nassau ("the County"), the Nassau County Executive, Thomas R. Suozzi ("Suozzi"), and the Nassau County Director of Labor Relations, David S. Greene ("Greene") (collectively, "defendants"), alleging violations of the United States Constitution under 42 U.S.C. § 1983, the New York State Constitution, and New York State law. Specifically, plaintiffs allege that they were denied compensation due to them because of their political affiliations and age. Defendants move to dismiss the complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted. For the reasons that follow, defendants' motion is granted in part and denied in part.

## I. BACKGROUND

The following facts are derived from the complaint, documents incorporated by reference therein, and a matter of public record – namely, a labor arbitrator's decision. The facts are taken as true for the purposes of this motion to dismiss.

For all relevant periods, plaintiffs were employees of the County. Plaintiff Walter Henneberger ("Henneberger") began working for the County in 1984, and later attained the position of Assistant to Deputy Commissioner of Public Works for Administration. (Compl. ¶¶ 53, 55.) Plaintiff Walter Lipinsky ("Lipinsky") began working for the County in 1972 and later also attained the position of Assistant to Deputy Commissioner of Public Works for Administration. (Compl. ¶¶ 73, 74.) Plaintiff Glenda Smith ("Smith") began

working for the County in 1985 and later attained the position of Community Service Representative. (Compl. ¶¶ 96, 101.) Plaintiff Thomas Tilley ("Tilley") began working for the County in 1977 and later attained the position of Fire Marshall. (Compl. ¶¶ 109, 112.) Plaintiff Douglas Wipperman ("Wipperman") began working for the County in 1991 and later attained the position of Director of Data Processing. (Compl. ¶¶ 135, 139.) All of the plaintiffs are registered members of the Republican Party and/or have held leadership positions in the Republican Party. (Compl. ¶¶ 28 & *passim*.).

Defendant Suozzi was elected to the position of Nassau County Executive in November 2001 and took office in January 2002. (Compl. ¶¶ 12, 30.) During all relevant periods, defendant Greene was Director of Labor Relations for the County. (Compl. ¶ 13.)

### 1. The PERB II Decision

In December 2001, pursuant to a decision by the New York State Public Employment Relations Board ("PERB"), the positions held by plaintiffs became part of the Civil Service Employees Association ("CSEA" or "the Union") bargaining unit. (Compl. ¶ 4.) Previously, plaintiffs had been "ordinance employees" – that is, County employees who are not compensated in accordance with the salary provisions set forth in the Collective Bargaining Agreement ("CBA") between the CSEA and the County. (Compl. ¶ 15.) By contrast, under the CBA, employees are generally paid in accordance with one of three pay schedules. (Compl. ¶ 21.)

The PERB decision issued in 2001 ("PERB II") relied upon a prior decision issued by the Nassau County PERB in 1998 ("PERB I"). The PERB I decision determined that certain positions previously classified as "ordinance" employee positions, not including the plaintiffs' positions, should be classified as members of the CSEA bargaining unit. (Compl. ¶ 19.) Subsequently, the PERB II decision determined that certain positions previously classified as "ordinance" employee positions, *including* the plaintiffs' positions, should also be included in the CSEA bargaining unit. (Compl. ¶ 21.) *See In the Matter of Petition for Unit Clarification and/or Unit Placement Civil Service Employees Assoc., Inc., Local 1000, AFSCME, AFL-CIO (Local 830)* and *County of Nassau*, No. R-066, 2001 NYPER (LRP) LEXIS 193, at *2 (County of Nassau PERB, April 3, 2001) (hereinafter, "PERB II decision").

### 2. The Collective Bargaining Agreement

The PERB II decision, however, was silent as to how the plaintiffs were to be compensated under the CBA. (Compl. ¶ 22.) As noted, the CBA provides for employees covered by its provisions to be placed into one of three salary plans. Moreover, under the CBA, employees are entitled to annual wage increases. (Compl. ¶ 16.) However, the PERB II decision did not specify (1) which, if any, of the salary plans should apply to the plaintiffs' positions, or (2) whether plaintiffs were entitled to receive the bargained-for wage increases. (Compl. ¶ 22.)

The County and the CSEA entered into CBAs in 1998 and in 2003. Section 49-6 of the 1998 CBA specifically applies to those employees added to the CSEA bargaining unit by the PERB I decision, stating, in relevant part:

Effective 4/13/99, the previously non-unionized employees who were recently added to the CSEA bargaining unit by Nassau County PERB shall be placed on the salary step which corresponds . . . to their pre-[CSEA bargaining unit] grade and step, and shall receive the benefits of the [CBA]. . . . The union and the County shall continue to discuss/negotiate . . . any additional salary changes sought by the union for this group.

County of Nassau – CSEA Collective Bargaining Agreement, January 1, 1998 – December 31, 2002, Section 49-6 (hereinafter, "1998 CBA"). (*See* Compl. ¶ 45.) As a result of this provision, those former "ordinance" employees affected by the PERB I decision received pay adjustments in accord with the compensation provisions of the CBA. (Compl. ¶¶ 45, 46.)

By contrast, the 2003 CBA did not specifically address those employees added to the CSEA bargaining unit by the PERB II decision (hereinafter, the "PERB II employees," a group which includes the plaintiffs). *See* County of Nassau – CSEA Collective Bargaining Agreement, January 1, 2003 – December 31, 2007, Section 49-4 (hereinafter, "2003 CBA"). Accordingly, following the PERB II decision, plaintiffs continued to receive the same amount of compensation that they received prior to their transition from "ordinance" to CSEA employees, and did not receive the negotiated wage increases set forth in the CBA. (Compl. ¶¶ 22-23 & *passim*.)

### 3. The Union Grievances

Subsequent to the PERB II Decision, the Union filed a grievance on behalf of the PERB II employees, alleging that the County had violated the 1998 CBA by not treating those employees in a manner identical to those employees brought into the CSEA bargaining unit by the PERB I decision. *In the Matter of the Arbitration between County of Nassau and CSEA Local 830*, Class Action #241-01, at 3, March 30, 2004 (Scheinman, Arb.) (hereinafter, "the Arbitrator's decision"). Pursuant to the grievance procedures outlined in Section 23 of the CBA, the grievance was heard before an arbitrator. In a decision issued on March 30, 2004, the arbitrator found that Section 49-6 of the 1998 CBA applied only to those employees affected by the PERB I decision. Arbitrator's Decision at 6. Accordingly, the arbitrator found that, in preparing the CBA, the Union "did not negotiate salaries and increments on behalf of [the PERB II employees]. The County, therefore, did not violate the [CBA] by failing to give [the PERB II] employees . . . the contractual increases." *Id.*

### 4. Plaintiffs' Claims

Plaintiffs allege that Suozzi and Greene, acting as "high-ranking official[s]" of the County, have denied plaintiffs the compensation set forth in the CBA because of plaintiffs' respective political affiliations with Suozzi's predecessor as County Executive and/or their associations with the Republican Party. (*See* Compl. ¶¶ 76, 103, 115, 141.)

Plaintiffs also assert that "comments were made" that the plaintiffs, excluding plaintiffs Henneberger and Smith, would not receive the compensation at issue because of their age and/or ability to retire. (Compl. ¶¶ 81, 121,

154.) Plaintiffs do not offer details regarding these comments, such as the speakers or the time of occurrence.

## II. DISCUSSION

### A. MATERIALS CONSIDERED BY THE COURT

As a threshold matter, the Court addresses its decision to consider certain documents outside the pleadings. Generally, "Rule 12(b) gives district courts two options when matters outside the pleadings are presented in response to a 12(b)(6) motion: the court may exclude the additional material and decide the motion on the complaint alone or it may convert the motion to one for summary judgment." *Kopec v. Coughlin*, 922 F.2d 152, 154-55 (2d Cir. 1991) (quoting *Fonte v. Board of Managers of Continental Towers Condominium*, 848 F.2d 24, 25 (2d Cir. 1998)) (internal quotation marks omitted). However, under Rule 12(b), the "complaint includes . . . any statements or documents incorporated into it by reference." *Paulemon v. Tobin*, 30 F.3d 307, 308-09 (2d Cir. 1994). Moreover, "[e]ven where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

Here, the Court finds that the complaint (1) incorporates by reference the PERB II decision, and (2) relies heavily upon the terms and effect of the CBAs between the CSEA and the County from 2001 through 2005. In addition, the Court takes judicial notice of the Arbitrator's decision. Accordingly, for the reasons that follow, the Court will consider these matters in ruling on the instant motion.

First, the complaint makes detailed reference to the PERB II decision and thereby incorporates it by reference into the complaint. *Paulemon*, 30 F.3d at 308-9. The complaint outlines the procedural history preceding the PERB II decision, summarizes the decision itself, and describes its effect upon plaintiffs. (Compl. ¶¶ 20-26, 41, 47, & *passim*); *see generally Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one [for summary judgment] under Rule 56 is largely dissipated.").

Second, the complaint relies heavily on the CBA and thereby renders that document integral to the complaint. The complaint relies on the CBA in framing plaintiffs' claims by (1) describing generally how employees are compensated pursuant to the CBA, and (2) providing detailed calculations for back-pay allegedly due to plaintiffs based on the salary provisions set forth in the CBA. (Compl. ¶¶ 14, 15, 45, & *passim*); *see Ruff v. Genesis Holding Corp.*, 728 F. Supp. 225, 226 n.2 (S.D.N.Y. 1990) (considering a document that "was referred to extensively throughout the [c]omplaint, rather than merely quoted from sporadically").

Finally, the Court takes judicial notice of the Arbitrator's decision regarding the application of the wage provisions of the CBA to the PERB II employees. A court may take judicial notice of an opinion issued in a prior proceeding, but "only to establish the existence of the opinion, not for the truth of the facts asserted in the opinion." *Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2006) (finding that

district court erred in considering the truth of facts asserted in an opinion by a city agency) (citing *Lum v. Bank of America*, 361 F.3d 217, 222 n.3 (3d Cir. 2004)) (internal quotation marks omitted); *see In re Sterling Foster & Co., Inc., Securities Litigation*, 222 F. Supp. 2d 216, 253-54 (E.D.N.Y. 2002) (taking judicial notice of filings by a third-party in an arbitration proceeding against defendant where filing was a "public record"); *Seneca Ins. Co. v. Wilcock*, No. 01 Civ. 7620 (WHP), 2002 WL 1067828, at *2 (S.D.N.Y. May 28, 2002) (taking judicial notice of "documents . . . that derive from [plaintiff's] New York State arbitration proceedings because they are matters of public record."); *see also Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426-27 (3d Cir. 1999) ("[O]n a motion to dismiss, we may take judicial notice of another court's opinion – not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity."). Accordingly, the Court is considering the information contained in the Arbitrator's decision "not for its truth but . . . to establish the fact" of the arbitration proceeding.[1] *See In re Sterling Foster & Co., Inc., Securities Litigation*, 222 F. Supp. 2d at 254.

However, the Court will not consider assertions made by defendants in their moving papers regarding matters that are not referenced in nor integral to the complaint. Specifically, defendants ask the Court to consider, in ruling on the instant motion, the ongoing mediation between the County and the Union regarding the application of the

CBA to the PERB II employees.[2] *See* Defs.' Mem. at 15 ("The outcome of the parties' mediation may make plaintiffs whole and give them the requested relief, negating the asserted claims."). Here, the complaint does not make any reference to ongoing mediation between the County and the CSEA; moreover, the complaint does not "rel[y] heavily upon [the] terms and effect" of any document relating to a mediation proceeding. *Chambers*, 282 F.3d at 153. Accordingly, any ongoing mediation proceeding cannot be considered "integral to the complaint," and must be excluded upon consideration of a Rule 12(b) motion to dismiss.[3] *See id.* ("[A]

---

[1] The Court also declines to accord preclusive effect to the Arbitrator's decision. *See infra.*

[2] Although defendants refer to an "agreement to mediate," they fail to offer *any* documentation regarding ongoing mediation between the parties. *See* Defs.' Mem. at 1. In their papers in opposition to the instant motion, plaintiffs also refer to ongoing mediation between the County and the CSEA regarding the compensation of PERB II employees. *See* Pls.' Mem. in Opp. at 10. However, in ruling on a motion to dismiss, the Court "cannot consider . . . admissions or statements in the parties' memorand[a] of law as factual allegations at this stage of the case." *Engler v. Cendant Corp.*, 434 F. Supp. 119, 127 (E.D.N.Y. 2006); *see Henthorn v. Dept. of Navy*, 29 F.3d 682, 688 (D.C. Cir. 1994) ("We have found no case . . . suggesting that a trial court must consider contradictory factual allegations made in a brief opposing a motion to dismiss when ruling on a 12(b)(6) motion. In fact, the sparse case law addressing the effect of factual allegations in briefs or memoranda of law suggests that such matters may never be considered when deciding a 12(b)(6) motion.").

[3] The Court also declines, at this early juncture in the case, to convert this motion to dismiss to one for summary judgment. *See, e.g., Global Network Commc'ns, Inc.*, 458 F.3d 150 (2d Cir. 2006) ("The conversion requirement of Rule 12(b) . . . deters trial courts from engaging in factfinding when ruling on a motion to dismiss and ensures

plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough.") (internal quotation marks omitted).

The Court notes that, while declining to consider assertions regarding the specific course of ongoing mediation between the County and the CSEA, it may consider any references made to mediation in the CBA, a document which plaintiffs have incorporated into the complaint.

## B. MOTION TO DISMISS STANDARD

In reviewing a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted, the court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). Dismissal is warranted only if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Weixel v. Board of Educ. of City of New York*, 287 F.3d 138, 145 (2d Cir. 2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The appropriate inquiry is "not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Twombly v.*

_____

that when a trial judge considers evidence [outside] the complaint, a plaintiff will have an opportunity to contest defendant's relied-upon evidence by submitting material that controverts it.").

*Bell Atl. Corp.*, 425 F.3d 99, 106 (2d Cir. 2005), *cert. granted*, 126 S.Ct. 2965 (2006).

## C. 42 U.S.C. § 1983 CLAIMS[4]

### 1. Exhaustion

Defendants argue that all of plaintiffs' claims should be dismissed because plaintiffs seek to litigate a "mere contract dispute" before they have exhausted the dispute resolution procedures set forth in the CBA. (Defs.' Mem. at 14.) The Court finds that (1) the plaintiffs need not exhaust the CBA's dispute resolution procedures before bringing suit under 42 U.S.C. § 1983 (hereinafter, "Section 1983") and (2) the complaint states non-contract claims that may be pursued in a Section 1983 action.

First, the Supreme Court has found that Section 1983 does not impose an exhaustion requirement on plaintiffs. *See, e.g., Patsy v. Board of Regents of State of Florida*, 457 U.S. 496, 516, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982) ("[E]xhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983."). As such, plaintiffs subject to bargained-for dispute resolution procedures set out in employment contracts need not

_____

[4] The complaint alleges a violation of 42 U.S.C. § 1981 ("Section 1981"). However, in their opposition papers, plaintiffs concede that the complaint fails to state a claim under Section 1981. The Court agrees and hereby dismisses plaintiffs' claims under Section 1981. *See, e.g., Mian v. Donaldson, Lufkin & Jenrette Securities Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993) ("[A]n essential element to [a Section 1981] cause of action is a requirement that the alleged discrimination took place because of the individual's race.").

exhaust those procedures prior to bringing suit under Section 1983.[5] *See Mahoney v. Hankin*, 593 F. Supp. 1171, 1174 (S.D.N.Y. 1984) (finding that, in a § 1983 action alleging free speech, privacy, and procedural due process violations, "plaintiff needed to exhaust neither the state administrative remedies nor the remedies under the collective bargaining agreement before the case could be heard"); *DeLoreto v. Ment*, 944 F. Supp. 1023, 1030 (D. Conn. 1996) ("[T]here is no requirement in . . . federal law that requires [p]laintiffs to exhaust their grievance and arbitration procedures before filing a section 1983 suit."); *see also McDonald v. City of West Branch, Michigan*, 466 U.S. 284, 290, 104 S.Ct. 1799 (1984) ("[A]lthough arbitration is well suited to resolving contractual disputes, [the Supreme Court's] decisions . . . compel the conclusion that it cannot provide an adequate substitute for a judicial proceeding in protecting the federal statutory and constitutional rights that § 1983 is designed to safeguard.").

Second, defendants assert that the complaint must be dismissed because it cloaks a contract dispute as a Section 1983 claim and thereby attempts to evade the bargained-for dispute resolution procedures set forth in the CBA. The Court rejects that argument in part, as it finds, for the reasons that follow, that the complaint alleges some claims for violations of constitutional, rather than contractual, rights guaranteed to plaintiffs.

2. Standard for Section 1983 Claims

To prevail on a claim under Section 1983, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, (2) by a person acting under the color of state law. 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress of the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). Here, it is undisputed that defendants were acting under the color of state law.

3. First Amendment Retaliation Claims

"[A] section 1983 claim will lie where the government takes negative action against an individual because of his [or her] exercise of rights guaranteed by the Constitution or federal laws." *Friedl v. City of New York*, 210 F.3d 79, 86-87 (2d Cir. 2000). Plaintiffs assert that defendants denied them higher compensation because they engaged in associational activities protected by the First Amendment. (Compl. ¶¶ 173, 180(a)[6], 181.) Specifically, plaintiffs allege that they were targeted by defendants based on the plaintiffs' membership and/or active participation in the Republican Party.

---

[5] Moreover, while the *existence* of dispute resolution procedures may prove relevant in considering plaintiffs' procedural due process claims, *see, e.g., Narumanchi v. Bd. of Trs. of Conn. State Univ.*, 850 F.2d 70, 72 (2d Cir. 1988), there is no requirement for plaintiffs to exhaust such procedures prior to bringing suit. *See Costello v. Town of Fairfield*, 811 F.2d 782, 785 (2d Cir. 1987) (Van Graafeiland, J. concurring) (stating that "a municipal employee is not required to pursue collectively-bargained-for grievance procedures before filing suit under Section 1983 to challenge the constitutional sufficiency of those grievance procedures").

[6] Plaintiffs have labeled two separate paragraphs of their complaint as "180." The Court will refer to the first as "180(a)" and to the second as "180(b)."

The defendant County is a government entity and all individual defendants are County employees sued in their official capacities. Accordingly, plaintiffs' First Amendment retaliation claims must be evaluated under case law addressing speech in the public employment setting. *See Munafo v. Metropolitan Transp. Authority*, 285 F.3d 201, 211 (2d Cir. 2002). For the reasons that follow, the Court finds that the complaint states a claim under Section 1983 for First Amendment retaliation.

To state a First Amendment retaliation claim as a public employee under Section 1983, a plaintiff must allege that "(1) his speech addressed a matter of public concern, (2) he suffered an adverse employment action, and (3) a causal connection existed between the speech and the adverse employment action, so that it can be said that his speech was a motivating factor in the determination." *Velez v. Levy*, 401 F.3d 75, 95 (2d Cir. 2005) (quoting *Feingold v. N.Y.*, 366 F.3d 138, 160 (2d Cir. 2004)) (internal quotation marks omitted). If a plaintiff has alleged these three elements, the public employer may still avoid liability if it shows that it would have taken the same adverse action even absent the protected speech. *Mandell v. County of Suffolk*, 316 F.3d 368, 382-83 (2d Cir. 2003).

### a. Relationship of Plaintiffs' Associational Activities to a Matter of Public Concern

"[A] public employee bringing a First Amendment freedom of association claim must persuade a court that the associational conduct at issue touches on a matter of public concern." *Cobb v. Pozzi*, 363 F.3d 89, 102 (2d Cir. 2004); *see also Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999) ("[S]peech on any matter of political, social, or other concern to the community is protected by the First Amendment.") (quoting *Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)) (internal quotation marks omitted). Here, all of the associational conduct for which plaintiffs allege retaliation relates to plaintiffs' "political affiliation or support" and, therefore, meets the "public concern" test and is constitutionally protected. *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 75, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990) (finding that certain adverse employment actions "based on political affiliation or support are an impermissible infringement on the First Amendment rights of public employees"); *see, e.g., Coogan v. Smyers*, 134 F.3d 479, 483–84 (2d Cir. 1998) ("Political patronage or party affiliation are impermissible reasons for dismissing government employees absent a showing that party affiliation is an appropriate requirement for the effective performance of the public office involved.") (internal quotation marks omitted).

### b. Adverse Employment Action

Plaintiffs allege that, following the PERB II decision, defendants refused to apply the wage provisions of the CBA to their positions, thereby imposing a "freeze" on plaintiffs' compensation. (Compl. ¶ 5.) Defendants argue that the wage "freeze" does not constitute an adverse employment action because, pursuant to the Arbitrator's decision, the CBA did not require the County to provide specific levels of compensation to plaintiffs.

"In the context of a First Amendment retaliation claim, . . . only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action." *Zelnick v. Fashion Institute of Technology*, 464 F.3d 217, 225 (2d Cir. 2006)

(internal quotation marks omitted). As such, "[a]dverse employment actions include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand." *Morris*, 196 F.3d at 110. Moreover, even "lesser actions may . . . be considered adverse employment actions," *id.*, as long as the alleged act of retaliation "is more than de minimis." *Zelnick*, 464 F.3d at 226. However, in conducting this "heavily fact-specific, contextual determination," the Court must focus on "the effect of [the employer's actions] on the exercise of free speech rights of a person of ordinary fitness" rather than on the "material adverse changes" in plaintiffs' employment. *Id.* at 227 ("[The Second Circuit] has never held that a public employee plaintiff alleging retaliation in violation of the First Amendment must demonstrate a material change in employment terms or conditions.").

Here, plaintiffs have alleged actions by defendants that could reasonably deter an individual of ordinary firmness, situated similarly to plaintiffs, from exercising his or her free speech rights. Plaintiffs allege that defendants refused to allow plaintiffs to receive the compensation and wage increases set forth in the CBA, thereby "freezing" plaintiffs' wages and decreasing the amount of pension benefits to which plaintiffs would otherwise be entitled. The Court finds that the alleged adverse action poses a sufficient threat to plaintiffs' exercise of free speech rights so as to constitute an adverse employment action. *See Rutan*, 497 U.S. at 73 ("Employees who find themselves in dead-end positions due to their political backgrounds *are* adversely affected. They will feel a significant obligation to support political positions held by their superiors, and to refrain from acting on the political views they actually hold, in order to progress up the career ladder.").

Moreover, the Court finds that the Arbitrator's decision does not foreclose this Court's consideration of whether plaintiffs have suffered an adverse employment action. In *McDonald v. City of West Branch*, the Supreme Court held that, when considering a public employee's Section 1983 claim alleging First Amendment retaliation, a federal court should not accord preclusive effect to an award in an arbitration proceeding brought pursuant to the terms of a collective-bargaining agreement. 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984); *see also Fayer v. Town of Middlebury*, 258 F.3d 117, 121 (2d Cir. 2001) ("[T]he Supreme Court ruled [in *McDonald*]. . . that the determinations of labor arbitrators pursuant to collective bargaining agreements do not preclude subsequent federal actions to vindicate certain federal statutory and constitutional rights."). The scope of the Supreme Court's holding in *McDonald* has been limited in subsequent cases. *See, e.g., Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 35, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (enforcing an agreement to arbitrate certain statutory claims and distinguishing *McDonald* as involving "the quite different issue [of] whether arbitration of contract-based claims precluded subsequent judicial resolution of statutory claims"); *Burkybilie v. Bd. of Educ. of Hastings-On-Hudson Union Free School Dist.*, 411 F.3d 306, 311 (2d Cir. 2005) (noting that the holding in *McDonald* has been "called into question by a more recent line of Supreme Court cases that permit arbitration agreements to foreclose access to federal courts," but declining to "decide . . . whether arbitrations have preclusive effect" in subsequent actions in federal court). However, because the instant action closely mirrors the facts of *McDonald* itself – involving a public employee's post-arbitration claim under Section 1983 for First

Amendment retaliation – that holding controls the preclusive effect to be accorded the Arbitrator's decision in this case. *See Pappas v. Giuliani*, 118 F. Supp. 2d 433, 440 (S.D.N.Y. 2000) ("The instant action is quite similar to *McDonald*. . . . The same concerns that convinced the Court not to accord state arbitration findings issue preclusion in *McDonald* counsel against allowing preclusion in the instant case."); *Giles v. City of New York*, 41 F. Supp. 2d 308, 313-14 (S.D.N.Y. 1999) ("[A] post-arbitration proceeding is not bound by the arbitrator's factual conclusions. . . . [T]he arbitral decision may be admitted as evidence and accorded such weight as the court deems appropriate.") (internal quotation marks omitted); *Battle v. Associates for Women's Medicine, PLLC*, No. 05 Civ. 8373 (DC), at *3, 2006 WL 2642137 (S.D.N.Y. Sept. 15, 2006) ("The Supreme Court . . . has refused to give preclusive effect to arbitration proceedings in certain circumstances, such as when they would foreclose a subsequent § 1983 action.") (citing *McDonald*, 466 U.S. 284).

The Court in *McDonald* found that "although arbitration is well suited to resolving contractual disputes, . . . it cannot provide an adequate substitute for a judicial proceeding in protecting the federal statutory and constitutional rights that § 1983 is designed to safeguard." 466 U.S. at 290. In particular, the Court noted, an arbitrator's decision should not be accorded preclusive effect because (1) an arbitrator may not have "the expertise required to resolve the complex legal questions that arise in § 1983 actions;" (2) "an arbitrator's authority derives solely from the contract . . . [and therefore] an arbitrator may not have the authority to enforce § 1983"; (3) the interests of the union, which "has exclusive control over the manner and extent to which . . . [a] grievance is presented," are not always "identical or even compatible" with those of an individual employee; and (4) "arbitral factfinding is generally not equivalent to judicial factfinding." *McDonald*, 466 U.S. at 290-291.

This Court finds that the concerns cited in *McDonald* also counsel against according preclusive effect to the Arbitrator's decision in the instant case with regard to plaintiffs' Section 1983 claims. Accordingly, because plaintiffs have alleged an adverse employment action that satisfies the pleading requirements for a First Amendment retaliation claim, this Court declines to bar plaintiffs' claims on the basis of an arbitrator's decision. Although an arbitral decision may be admitted as evidence in a Section 1983 action, it is left to a federal court to provide "the ultimate resolution" of plaintiffs' claims. *Id.* at 292 n.13 (quoting *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 60 n.21, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974)) (internal quotation marks omitted).

c. Causal Connection Between Plaintiffs'
Associational Activities and Adverse
Employment Action

Plaintiffs may demonstrate a causal connection between their protected associational activities and the alleged adverse employment action by offering circumstantial evidence, for example, "by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus." *Cobb*, 363 F.3d at 108 (quoting *Morris*, 196 F.3d at 110*); see Anemone v. Metropolitan Transp. Authority*, 410 F. Supp. 2d 255, 267 (S.D.N.Y. 2006). In any event, the causal connection must be sufficient to warrant the inference that the protected speech and activities were "at least a substantial or motivating factor" in the adverse employment action. *Zelnik*, 464 F.3d at 225.

Plaintiffs have pled a causal connection for the adverse employment action they assert as the basis for their claims. They allege that defendants Suozzi and Greene subjected plaintiffs to the wage "freeze" because of plaintiffs' ties to the previous Republican administration and their political associations with the Republican Party. (Compl. ¶¶ 28-33, 183.) Accordingly, plaintiffs have pled all three elements of a First Amendment retaliation claim under Section 1983.

4. Due Process Claims

Plaintiffs also allege defects in the procedure that resulted in the wage "freeze." Specifically, plaintiffs allege that the PERB II decision, the CBA, and/or New York law created a property interest in the compensation levels set forth in the CBA, and that defendants "did not give plaintiffs the process they were due" in denying that property interest to plaintiffs.[7] (Compl. ¶ 44.) For the reasons that follow, the Court finds that the complaint fails to state a claim under Section 1983 for denial of a property interest guaranteed by the Fourteenth Amendment to the Constitution of the United States.

a. Property Interest

"In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). To sustain such a claim, plaintiffs must show that (1) they possessed a property interest protected by the Constitution or federal statutes, and (2) they were deprived of that property interest without due process.

---

[7] The Complaint also includes a single allegation that plaintiffs have a "liberty interest" in the compensation levels set by the CBA. (Compl. ¶ 40.) However, in their opposition papers, plaintiffs describe the "liberty interest" allegation as a "typographical error" and that plaintiffs seek to allege only deprivations of a *property* interest. (Pls.' Opp. at 13.) Because of the representations of plaintiffs and the absence of any other allegations in the complaint in support of a liberty interest claim, the Court will construe the complaint as alleging only the deprivation of a property interest.

*Ciambriello v. County of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002) (citing *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995)). Here, the threshold issue is whether plaintiffs have alleged that they possess a protected property interest.

Property interests are not created by the Constitution, but "'stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" *Ciambriello*, 292 F.3d at 313 (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). To state a claim under Section 1983, "plaintiff must have a property interest in a benefit that is 'more than an abstract need or desire for it. [He] must instead have a legitimate claim of entitlement to it' under state or federal law." *Finley v. Giacobbe*, 79 F.3d 1285, 1296 (2d Cir. 1996) (quoting *Roth*, 408 U.S. at 577)).

Plaintiffs allege they have a property interest in the compensation levels and wage increases set forth in the CBA, and point to the PERB II decision, New York law, and the CBA itself as the "independent source[s]" of that interest. A collective bargaining agreement is, of course, a contract between employer and employees. As such, courts have uniformly held that a collective bargaining agreement may be the source of a property right entitled to due process protection. *See, e.g., Brock v. Roadway Express, Inc.,* 481 U.S. 252, 260-61, 107 S.Ct. 1740, 1747, 95 L.Ed.2d 239 (1987) (plurality opinion) (employer's right to discharge an employee for cause pursuant to collective bargaining agreement is property interest protected by fifth amendment); *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991) (collective bargaining agreement providing that employee could not be fired without just cause creates property right under due process clause); *Danese v. Knox*, 827 F. Supp. 185, 190-91 (S.D.N.Y. 1993) (collecting cases). However, although it is clear that a collective bargaining agreement can create a protected property interest, the issue in this case is whether the right asserted – a right to increased compensation, as set forth in the CBA – is a property right which is subject to due process protection.

Generally, employees have a property interest in continuing public employement where, by statute or contract, the state is barred from terminating the employment relationship without cause. *See, e.g., Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985). However, the Second Circuit has limited the kinds of rights created by contract which are entitled to due process protection. In *S & D Maintenance Co., Inc. v. Goldin*, the Second Circuit explained its reasoning in so limiting the scope of due process protection:

An interest in enforcement of an ordinary commercial contract with a state is qualitatively different from the interests the Supreme Court has thus far viewed as "property" entitled to procedural due process protection. *Goldberg v. Kelly*[, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1972),] involved entitlement to welfare benefits conferred by statute upon our poorest citizens to provide for their immediate well-being, if not survival. *Board of Regents v. Roth, supra,* and *Perry v. Sindermann,* [408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972),] concerned claims to tenured status in public employment. In these contexts, the Due Process Clause is invoked to protect something more

than an ordinary contractual right. Rather, procedural protection is sought in connection with a state's revocation of a *status,* an estate within the public sphere characterized by a quality of either extreme dependence in the case of welfare benefits, or permanence in the case of tenure, or sometimes both, as frequently occurs in the case of social security benefits.

844 F.2d 962, 966 (2d Cir. 1988) (internal citations omitted); *see Martz v. Incorporated Village of Valley Stream*, 22 F.3d 26, 30 (2d Cir. 1994) ("[A]lthough a public contract can confer a protectible benefit, not every contract does so.") (internal citations omitted); *see also Danese*, 827 F. Supp. at 192 (quoting *Goldin*).

Moreover, the Second Circuit has "declined to recognize a constitutionally protected property interest in a claim for an alleged contractual increase" in benefits provided for in a collective bargaining agreement. *Id*. at 967 (discussing *Costello*, 811 F.2d 782). In *Costello*, a group of retired police officers brought suit under Section 1983 against their employer, a town government, alleging that the town had denied them certain pension benefit increases allegedly due to plaintiffs under a collective bargaining agreement. In dismissing the complaint, the court distinguished its earlier decision in *Basciano v. Herkimer*, 605 F.2d 605 (2d Cir. 1978), where the court found a protected property interest in disability retirement benefits. According to the court, the claim in *Costello* differed from that in *Basciano* because the *Costello* plaintiffs had not been denied the *entirety* of their retirement benefits. Rather, in *Costello*, plaintiffs had "been receiving their pensions and merely dispute the lack of an increase they claim is due them under the collective bargaining agreement." *Costello*, 811 F.2d at 784. The court found that "before undertaking to determine if there is an entitlement to an increase . . . there first should be a resolution of the dispute concerning whether the claimed increase is due." *Id*. As such, the court believed that plaintiffs' due process claim essentially involved "the interpretation of a contract term" and, because a contract dispute "does not give rise to a cause of action under section 1983," declined to accord constitutional protection to plaintiffs' interests in the increased benefits. *Id*.

The Court views the instant case as controlled by the authorities cited above that denied due process protection to claims for certain entitlements under collective bargaining agreements. Here, plaintiffs seek due process protection for an interest created solely by contract. *See Danese*, 827 F. Supp. at 193 ("While there may be no limit to the categories of 'property' rights which a legislature can create by statue, . . . the same [cannot] be said of 'property' rights created by a collective bargaining agreement.").

In addition, the Court finds that the alleged deprivation in this case does not amount to a deprivation of a status characterized either by "extreme dependence" or "permanence" under *Goldin*. *See Goldin*, 844 F.2d at 967; *see Danese*, 827 F. Supp at 193 (finding that where the alleged deprivation does not rise to the level of severity noted in *Goldin*, the right asserted is "more akin to 'an ordinary contract right'"). Plaintiffs have not been denied the entirety of their salary, but only certain wage increases allegedly due to them under the CBA; they do not assert, and the Court can find no reasonable basis to conclude, that the denial of these increased benefits will result in extreme poverty or the loss of their jobs.

Moreover, as in *Costello*, plaintiffs in this case "merely dispute the *lack of an increase* they claim is due" under the CBA. *Costello*, 811 F.2d at 784 (emphasis added). The Court finds that the denial of additional benefits allegedly due to plaintiffs under the CBA does not constitute the kind of deprivation that may give rise to a due process claim in the Second Circuit. Instead, on the issue of whether the complaint alleges a constitutionally protected property interest, the Court finds that plaintiffs are "attempting to turn what is essentially a contract dispute into a federal constitutional claim; this, of course, is impermissible."[8]  *Danese*, 827 F. Supp. at 193.

### b. Due Process

Even assuming *arguendo* that plaintiffs could assert a property interest in increased compensation under the CBA, the Court concludes that "the . . . union . . . procedures available to [p]laintiff[s] satisfied due process." *Koehler v. New York City*, No. 04 Civ. 6929 (RMB), 2005 WL 1123758, at *4 (S.D.N.Y. May 11, 2005); *see Costello*, 811 F.2d at 784 ("[W]e find no denial of due process because adequate post-deprivation remedies were available to appellants."). The Court finds that plaintiffs have not asserted any reasonable basis for finding that the grievance procedures set forth in the collective bargaining agreement are inadequate.

Three factors are to be considered in determining whether a particular procedure satisfies due process:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *see also O'Connor v. Pierson*, 426 F.3d 187, 197 (2d Cir. 2005). This test applies to grievance procedures outlined in collective bargaining agreements – procedures which are "routinely . . . held to provide adequate post-deprivation process." *O'Connor*, 426 F.3d at 197; *see also Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 213 (2d Cir. 2003).[9]

---

[8] The Court notes that the absence of a property interest in increased compensation that is entitled to due process protection does not extinguish plaintiffs' other claims based on the alleged violation of plaintiffs' substantive constitutional rights. *See, e.g., Velez*, 401 F.3d at (finding that the complaint stated a claim for First Amendment retaliation based on an adverse employment action, but failed to allege a property interest in continued employment that was protected by the Constitution); *Peres v. Oceanside Union Free Sch. Dist.*, 426 F. Supp. 2d 15, 26 (E.D.N.Y. 2006) (same); *Anemone*, 410 F. Supp. 2d at 268 (same); *JAV Auto Center, Inc. v. Behrens*, 418 F. Supp. 2d 439, 443 (S.D.N.Y. 2005) (finding that the complaint stated an equal protection claim based on selective treatment but failed to allege a property interest in state licenses that was protected by the Constitution).

[9] Initially, the Court notes that plaintiffs do not specifically challenge the adequacy of the process available to them under the CBA, nor do they articulate that any additional process was due. The complaint alleges only that "defendants did not give plaintiffs the process they were due." (Compl. ¶ 44.) Thus, plaintiffs have "fail[ed] to

First, the plaintiffs' alleged interest in the compensation set forth in the CBA is significant, though not as important as an individual's interest in continued employment. However, with regard to the second *Mathews* factor, the procedures set forth in the CBA minimize the risk of an erroneous deprivation of that interest. The CBA sets forth "contract grievance procedures" to address disputes arising between the Union or an employee and the County "with respect only to the meaning, interpretation or application of a provision of" the CBA. 1998 CBA, §§ 2-4, 23. The CBA procedures offer a five-step process for plaintiffs to address such disputes, "with or without the assistance of a representative of the Union." *Id*. at § 23-1. First, the grievant may complain to his or her immediate supervisor. *Id*. at § 23-1.1. Second, if the grievance is not "satisfactorily adjusted," the grievant may present the matter to his or her "department's head." *Id*. at § 23-1.2. Third, if the grievance is still not "satisfactorily adjusted," the grievant may present the matter to the Director of the Office of Lobar Relations, who must make a written determination of the grievance. *Id*. at § 23-1.3. Fourth, following that determination, the grievant may make an "advisory appeal" to either the Nassau County Grievance Board or, with the consent of the Union, to a panel of arbitrators. *Id*. at § 23-1.4. Finally, in Step Five, the County Executive must take action on the recommendation of the Grievance Board or the panel of arbitrators within forty-five days, or else any recommendation favorable to the grievant will become binding upon the County. *Id*. at § 23-1.5.

Similar grievance procedures contained in collective bargaining agreements have been found to satisfy the requirements of due process. In *Costello*, the Second Circuit found "no denial of due process because adequate post-deprivation remedies were available" where the agreement "outlined . . . a multi-step process designed to address disputes . . . between the Union, or any employee, with the Town," and the employees could "pursue their claim for additional benefits at progressive levels." 811 F.2d at 784-85. Moreover, the district court in *Danese* found that "the procedures set forth in the collective bargaining agreement" at issue satisfied due process, in part, because of an "elaborate three step grievance procedure" that helped to ensure "reliability" and provided a sufficient "opportunity to be heard." 827 F. Supp. at 194.

The probable value of additional procedural safeguards in this case appears minimal. In ruling on the Union's grievance on behalf of the PERB II employees, the arbitrator considered the specific deprivation asserted here – the denial to plaintiffs of compensation set forth in the CBA. *Cf. Ciambriello*, 292 F.3d at 321 (finding inadequate process where plaintiff was excluded from grievance proceedings and, as a result, the arbitrator failed to consider the relevant details of plaintiff's grievance).

Finally, because plaintiffs do not suggest any additional procedural safeguards and, following its own examination, the Court cannot find any deficiencies in the procedures at issue, the Court declines to speculate as to the County's interest in avoiding additional procedural requirements. As such, this Court finds that the existing grievance procedures

articulate any way in which the [County's] established procedures failed to provide [plaintiffs] with adequate procedural protection." *Harhay*, 323 F.3d at 213. Nevertheless, in an abundance of caution, the Court proceeds to examine the adequacy of the procedures available to plaintiffs.

provided all the process that was due to plaintiffs.

Accordingly, plaintiffs' "personal disappointment" with the outcome of those procedures "makes [them] no less binding" upon plaintiff. *Morris*, 196 F.3d at 115. Accordingly, plaintiffs' due process claims are dismissed in their entirety.

### 5. Equal Protection Claims

In a section of the complaint titled "Allegations Regarding Equal Protection Claims," plaintiffs allege that defendants lacked a "sufficiently compelling state interest to justify [the] disparity in treatment of similarly situated individuals." (Compl. ¶ 51.) The Court will construe this allegation as an equal protection claim arising from the critical event that underlines the complaint – the failure to pay plaintiffs the compensation set forth in the CBA. Defendants argue that the complaint does not state such a claim because plaintiffs failed to allege that they have been treated differently than the other PERB II employees.

The Equal Protection Clause of the Fourteenth Amendment is "essentially a direction that all persons similarly situated be treated alike." *Latrieste Restaurant v. Village of Port Chester*, 188 F.3d 65, 69 (2d Cir. 1999) (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)). To state a claim for denial of equal protection based on selective enforcement of the law, plaintiffs must allege that (1) they were selectively treated, as compared with others similarly situated; and (2) that such selective treatment was based on impermissible considerations, such as an intent to inhibit or punish the exercise of constitutional rights. *See id.*; *see also Birmingham v. Ogden*, 70 F. Supp. 2d

353, 372 (S.D.N.Y. 1999) (finding that the complaint stated an equal protection claim where it alleged selective treatment based on plaintiff's exercise of protected speech); *Burns v. Cook*, – F. Supp. 2d – , 2006 WL 3007704, at *8 (N.D.N.Y. 2006) (same).

Drawing all reasonable inferences in favor of the nonmovant, the Court finds that the complaint states a claim for an equal protection violation. First, taken as a whole, the complaint states that plaintiffs were selectively treated as compared with others similarly situated. Plaintiffs allege that "the beneficiaries of the PERB I decision received their proper pay adjustments" under the CBA, while the PERB II employees, including plaintiffs, did not receive similar pay adjustments. (Compl. ¶ 46.) Defendants may yet show that plaintiffs were not similarly situated to those employees affected by the PERB I decision; however, at this early juncture in the case, the Court declines to reach that conclusion. Second, the complaint alleges that the selective treatment of plaintiffs was based upon impermissible considerations – specifically, "because of [plaintiffs'] age . . . and political

affiliation[s].”[10]  (Compl. ¶¶ 180(a), 183.)

### 6. Civil Rights Conspiracy Claims

Plaintiffs allege a conspiracy under 42 U.S.C. §§ 1985 and 1986 (hereinafter, “Section 1985” and “Section 1986”) by defendants to deprive plaintiffs of their “rightful salary plan, step and raise increases.” (Compl. ¶ 185.) Plaintiffs’ Section 1985 conspiracy claims are barred by the intracorporate conspiracy doctrine. The intracorporate conspiracy doctrine posits that the officers, agents and employees of a single corporate or municipal entity, each acting within the scope of his employment, are legally incapable of conspiring together. *See, e.g., Herrman v. Moore*, 576 F.2d 453, 459 (2d Cir. 1978) (“[T]here is no conspiracy [under Section 1985] if the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own . . . officers[] and employees, each acting within the scope of his employment.”); *Cameron v. Church*, 253 F. Supp. 2d 611, 623 (S.D.N.Y. 2003); *Quinn v. Nassau County Police Dept.*, 53 F. Supp. 2d 347, 359-60 (E.D.N.Y. 1999); *Rini v. Zwirn*, 886 F. Supp. 270, 291 (E.D.N.Y. 1995) (“Intracorporate immunity has also been extended to the context of conspiracies between a public entity and its employees.”). In this case, the individual defendants are employees of a single municipal entity – the defendant County – and the alleged conspiracy consists of actions taken by those defendants within the scope of their employment.

Moreover, because no actionable conspiracy exists, plaintiffs’ Section 1986 claims must also fail. *See Dwares v. New York*, 985 F.2d 94, 101 (2d Cir. 1993) (“Liability under § 1986 . . . is dependent on the validity of a claim under § 1985.”) (citing *Dacey v. Dorsey*, 568 F.2d 275, 277 (2d Cir. 1978)).

### 7. Municipal Liability

It is well-settled that municipalities may not be liable under § 1983 for constitutional torts committed by its employees under a *respondeat superior* theory; rather, to prevail against a municipality, a plaintiff must demonstrate that his or her injury resulted from a municipal policy, custom, or practice. *See Coon v. Town of Springfield, Vt.*, 404 F.3d 683, 686 (2d Cir. 2005) (citing *Monell v. Dep’t of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Thus, to survive a motion to dismiss, plaintiffs may demonstrate the liability of a municipality, or, in this case, the County, by showing that “the action of the employee[s] in question is taken by, or is attributable to, one of the entity’s authorized policy makers [and therefore] the action will be considered the act of the entity itself.” *See, e.g., Bowen v. Rubin*, 385 F. Supp. 2d 168, 177 (E.D.N.Y. 2005) (citing *Amnesty America v. Town of West*

---

[10] The Court notes that, although the Court of Appeals has not yet ruled upon the precise issue, the weight of authority in the Second Circuit favors the position, and this Court so finds, that the Federal Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* (the “ADEA”) does not preempt claims under Section 1983 for age discrimination. *See, e.g., Purdy v. Town of Greenburgh*, 166 F. Supp. 2d 850, 867-68 (S.D.N.Y. 2001) (finding no ADEA preemption of § 1983 age discrimination claims); *Bendel v. Westchester County Health Care Corp.*, 112 F. Supp. 2d 324, 328 n. 3 (S.D.N.Y. 2000) (same); *Jungels v. State University College of New York*, 922 F. Supp. 779, 781 (W.D.N.Y.1996) (same), *aff’d sub nom. Jungels v. Jones*, 112 F.3d 504 (2d Cir.1997); *Stampfel v. City of New York*, No. 04 Civ. 5036 (PAC), 2005 WL 3543696, at *3 (S.D.N.Y. Dec. 27, 2005) (same).

*Hartford*, 361 F.3d 113, 126 (2d Cir. 2004)).

Here, the complaint states a claim for municipal liability by alleging that plaintiffs' rights were deprived by an unconstitutional course of action "attributable to . . . the [County's] authorized policymakers." *Amnesty America*, 361 F.3d at 126. "[E]ven a single action by a decisionmaker who 'possesses final authority to establish municipal policy with respect to the action ordered,' is sufficient to implicate the municipality in the [alleged] constitutional deprivation for the purposes of § 1983." *Id.* (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-82, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)) (internal citation omitted). In this case, defendants do not dispute plaintiffs' allegations that defendant Suozzi, as County Executive of Nassau County, and defendant Greene, as Director of Labor Relations, are "high-ranking" officials with the authority to establish County policy. (Compl. ¶¶ 12, 13.) *Cf. Adams v. Suozzi*, 448 F. Supp. 2d 448 (E.D.N.Y. 2006) (finding, for purposes of a due process claim, that Suozzi is "undoubtedly [a] high ranking official[] with final authority over significant matters for the County"). Therefore, because plaintiffs allege that defendants Suozzi and Greene sought to deprive plaintiffs' of their constitutional rights while acting as policymakers for the County, (Compl. ¶ 174), the County may be liable for any constitutional deprivation arising therefrom. Accordingly, for each viable claim asserted by plaintiffs under Section 1983 against defendants Suozzi and Greene – that is, the First Amendment retaliation and Equal Protection claims considered above – the Court finds that the complaint also states a claim against the County.

## D. STATE LAW CLAIMS

Plaintiffs also allege violations of the New York State Constitution, New York Human Rights Law §§ 290 *et seq.* ("NYHRL 290"), New York Civil Service Law, §§ 107 *et seq.* ("NYCSL 107"), and New York Labor Law §§ 201-d *et seq.* ("NYLL 201-d"). (Compl. ¶¶ 1, 187-88, 190.) Defendants argue that plaintiffs' state law claims should be dismissed for failure to serve a timely notice of claim upon defendants. For the reasons that follow, plaintiffs' state law claims are dismissed in their entirety.

State claims brought under state law in federal court are subject to state procedural rules. *See, e.g., Felder v. Casey*, 487 U.S. 131, 141, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988). As such, New York County Law § 52 ("Section 52") applies in this case and provides that

> [a]ny claim or notice of claim against a county . . . for damages arising at law or in equity . . . alleged to have been caused in whole or in part by or because of any misfeasance, omission of duty, negligence, or wrongful act on the part of the county, its officers, agents, servants or employees, must be made and served in compliance with section fifty-e of the general municipal law. . . . Every action upon such claim shall be commenced pursuant to the provisions of section fifty-i of the general municipal law.

Section 52 incorporates the notice of claim requirements contained in New York General Municipal Law §§ 50-e and 50-i ("Section 50-e" and "Section 50-i").[11] Section 50-e

_____

[11] While Section 50-e and 50-i specifically apply to tort claims under New York law, Section 52

requires that a notice of claim be filed within ninety days of the incident giving rise to the claim. Moreover, pursuant to Section 50-i, a plaintiff must plead in the complaint that: (1) the notice of claim was served; (2) at least thirty days has elapsed since the notice of claim was filed and before the complaint was filed; and (3) in that time the defendant has neglected to or refused to adjust or to satisfy the claim. *See Horvath v. Daniel*, 423 F. Supp. 2d 421, 423 (S.D.N.Y. 2006). The plaintiffs bear the burden of demonstrating compliance with the notice of claim requirement. *Id.*; *see Rattner v. Planning Comm'n of Vill. of Pleasantville*, 548 N.Y.S.2d 943 (N.Y. App. Div. 1989). In this case, it is undisputed that plaintiffs (1) have failed to comply with any of these requirements and (2) have yet to file a notice of claim upon defendants.

"Notice of claim requirements are construed strictly by New York state courts. Failure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action." *Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789, 793-94 (2d Cir. 1999) (internal quotations and citations omitted); *see Horvath*, 423 F. Supp.

2d at 423 ("Absent a showing of such a Notice of Claim, the complaint may be dismissed for failure to state a cause of action.") (internal quotation omitted). Accordingly, for the state law claims asserted in this case, "[t]he failure to file a notice of claim is fatal unless the action has been brought in the public interest, such as a class action brought to protect civil rights, or a court has granted leave to serve late notice." *Pustilnik v. Hynes*, No. 99 Civ. 4087 (JG), 2000 WL 914629, at *6 (E.D.N.Y. June 27, 2000) (citing *Mills*, 59 N.Y.2d 307).

The Court finds that the instant action, a private civil rights lawsuit, has not been brought in the public interest. *See, e.g., Feldman*, 349 F. Supp. 2d at 539 (finding employment discrimination claim that "seeks enforcement of [plaintiff's] private interests" is not in public interest); *Atkins v. County of Orange*, 251 F. Supp. 2d 1225, 1235 (S.D.N.Y. 2003) ("[T]he public interest exception [to the notice of claim requirement] does not apply when plaintiffs are seeking money damages for the sole purpose of redressing plaintiffs' individual injuries."); *id.* (finding that, while plaintiffs' recovery might have an effect on others' interests, "we do not think such an effect would be of any greater value to the public than any other award to civil rights plaintiffs"); *Turner v. County of Suffolk*, 955 F. Supp. 175, 177 (E.D.N.Y. 1997). Moreover, as discussed below, this Court cannot grant plaintiffs' leave to serve late notice.

As such, plaintiffs' failure to file a notice of claim requires dismissal of the state law claims against the County as well as the individual defendants. By its plain language, Section 52 applies to any action brought against the County. In addition, in this case, "there is nothing in the . . . complaint that could be construed as an allegation against

---

applies their service requirements to "[a]ny claim or notice of claim against a county for . . . invasion of personal or property rights, of every name and nature." *See Feldman v. Nassau County*, 349 F. Supp. 2d 528, 539 (E.D.N.Y. 2004) (finding that Section 52, "the statute applicable to plaintiff's claims against Nassau County . . . is broader than" Section 50-e, and that the "notice of claim provision of [Section] 52 covers plaintiff's [employment discrimination] claims against Nassau County"); *Gallo v. Suffolk County Police Dept.*, 360 F. Supp. 2d 502, 511-512 (E.D.N.Y. 2005); *Horvath v. Daniel*, 423 F. Supp. 2d 421, 423 (S.D.N.Y. 2006) (finding that Section 52 incorporates the notice of claim requirements contained in Section 50-i).

defendant[s] in [their] individual capacit[ies]," *Kalpin v. Cunningham*, 401 N.Y.S.2d 659 (N.Y. App. Div. 1978), and, therefore, plaintiffs' claims against defendants Suozzi and Green relate solely to their status as County employees. *See, e.g., Keating v. Gaffney*, 182 F. Supp. 2d 278, 290 (E.D.N.Y. 2001) (dismissing state law employment discrimination claims under NYHRL 296 where the county executive and other county employees were found to be "[c]ounty officials [or] employees . . . and, therefore, claims against them are subject to the notice of claim provision [in Section 52] as well"); *Pustilnik*, 2000 WL 914629, at *7 (dismissing state law employment discrimination claim because the county's district attorney and another county employee were found to be "[c]ounty officials subject to the notice of claim provision under [Section 52]"); *Atkins*, 251 F. Supp. 2d 1225 (dismissing New York Correction Law claims against county executive and other county officials based on plaintiffs' failure to serve timely notice of claims pursuant to Section 52).

Accordingly, because plaintiffs failed to serve a timely notice of claim on the County, all of their state law claims against the individual defendants and the County are dismissed without prejudice.[12] *See Gaffney*,

182 F. Supp. 2d 278 (dismissing NYHRL claims for failure to serve timely notice of claim); *Turner*, 955 F. Supp. 175 (same) (NYCSL 107 claim); *Flynn v. New York City Bd. of Educ.*, No. 00 Civ. 3775 (LAP), 2002 WL 31175229, at *9-*10 (S.D.N.Y. Sept. 30, 2002) (same) (New York Labor Law claim); *Alexander v. City of New York*, No. 02 Civ. 3555 (TPG), 2004 WL 1907432, at *22 (S.D.N.Y. Aug. 25, 2004) ("[T]he New York notice of claim requirement applies . . . to actions founded upon violations of state constitutional provisions."). Plaintiffs can return to federal court with their pendent state law claims only after they have satisfied the condition precedent required by Sections 52 and 50-e – that is, after they have filed an application to the appropriate state court for leave to file a late notice of claim, that request has been granted, and such a notice has been filed. *See Brown*, 717 F. Supp. at 261; *Horvath*, 423 F. Supp. 2d at 425.

Plaintiffs attempt to rescue their state law claims by arguing that (1) the "continuing violation doctrine" should toll the statutory period for filing a notice of claim and (2) defendants are barred by "equitable estoppel" from asserting a timeliness defense. The Court rejects both arguments.

Section 50-e(5) provides that a court "[u]pon application" of a plaintiff may, in its discretion, extend the time to serve a notice of claim. However, although the Court of Appeals has not ruled on the issue, district courts in the Second Circuit have routinely found that they lack jurisdiction to even consider such an application. In *Corcoran v. New York Power Authority*, 202 F.3d 530, 540 (2d Cir. 1999), the court noted that the "appropriate state court may extend the time to file a notice of claim" under Section 50-e,

---

[12] In their opposition papers, plaintiffs argue that the complaint states a claim under the ADEA. In truth, the complaint fails to make any allegation that defendants violated the ADEA and the ADEA is not referenced in the complaint. Therefore, the only relevance of the ADEA in this case is that a claim of age discrimination asserted under New York law would be analyzed using the same framework applied to ADEA claims. *See Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001). Because plaintiffs' age discrimination claims under New York law must be dismissed, the Court need not address the ADEA or apply the ADEA-framework to any of

plaintiffs' remaining claims.

but declined to decide "whether the federal court [had] such jurisdiction."

This Court abides by the overwhelming weight of authority among district courts in the Second Circuit and finds that Section 50-e(7) permits only certain *state* courts – "the supreme court or . . . the county court" in certain counties – to consider and to grant an application for an extension of time. N.Y. Gen. Mun. Law § 50-e(7); *see, e.g., Brown v. Metropolitan Transp. Authority*, 717 F. Supp. 257, 258-61 (S.D.N.Y. 1989) (citing New York Gen. Mun. Law § 50-e(7)); *Horvath*, 423 F. Supp. 2d at 423 ("We lack authority to permit plaintiff to file a late Notice of Claim); *Gibson v. Comm'r of Mental Health*, No. 04 Civ. 4350 (SAS), 2006 WL 1234971, at *5 (S.D.N.Y. May 8, 2006) ("Federal courts do not have jurisdiction to hear complaints from plaintiffs who have failed to comply with the notice of claim requirement, or to grant permission to file a late notice."); *Bunim v. City of New York*, No. 05 Civ. 1562 (KMK), 2006 WL 2056386, at*1 n.2 (S.D.N.Y. July 21, 2006) ("[T]his Court does not have jurisdiction to decide whether [p]laintiffs may file late Notices of Claim."); *Oshinsky v. New York City Housing Auth.*, No. 98 Civ. 5467 (AGS), 2000 WL 218395, at *14 n. 5 (S.D.N.Y. Feb. 23, 2000); *Jewel v. City of New York*, No. 94 Civ. 5454 (DLB), 1995 WL 86432, at *1-*2 (S.D.N.Y. Mar. 1, 1995). In *Brown*, the district court found that "until the state legislature amends [Section 50-e(7)] to include federal trial courts, [the court has] no choice but to dismiss for lack of jurisdiction plaintiff's application to file a late notice of claim or to have his notice of claim deemed timely filed." 717 F. Supp. at 260-61. Similarly, in this case, the Court lacks jurisdiction, pursuant to Section 50-e(7), to deem plaintiffs' state law claims timely filed.

Even assuming *arguendo* that this Court had jurisdiction to grant leave to file a late notice of claim, the Court would reject any such request on the merits. Initially, the Court notes that plaintiffs have not requested leave to serve a late notice of claim, as required under Section 50-e for claimants that wish to file a late notice of claim. *See* N.Y. Gen. Mun. Law § 50-e(5) ("*Upon application*, the court, in its discretion, may extend the time to serve a notice of claim.") (emphasis added). Rather, plaintiffs fail to offer any explanation for their failure to abide by New York notice-of-claim requirements and, instead, offer two unconvincing arguments that seek to evade those requirements completely.

First, plaintiffs' "continuing violation" argument fails because, assuming *arguendo* that such a continuing violation was present in this case, it would not explain or excuse plaintiffs' persistent failure to file a notice of claim. The "'continuing violation doctrine' . . . serves to toll the running of a period of limitations to the date of the commission of the last wrongful act." *Selkirk v. State*, 671 N.Y.S.2d 824, 825 (N.Y. App. Div. 1998). However, the continuing violation doctrine would only excuse the *late* filing of a notice of claim, not plaintiffs' failure to file *any* such notice. New York law requires that *some* notice of claim be served upon defendants before a court can entertain plaintiffs' state law claims. *See, e.g., Hey v. Town of Napoli*, 695 N.Y.S.2d 643, 644 (N.Y. App. Div. 1999) ("Compliance with the notice of claim requirement 'falls within the threshold jurisdiction of the court.'") (quoting *Matter of United Nations Dev. Corp. v. Norkin Plumbing Co.*, 45 N.Y.2d 358, 363 (N.Y. 1978)).

Second, the Court also rejects plaintiffs' "equitable estoppel" argument. Plaintiffs argue that defendants had actual notice of the

claims asserted herein because the County previously participated in PERB proceedings and arbitration relating to some of the issues that underline plaintiffs' claims. Therefore, plaintiffs contend that defendants should be estopped from objecting to plaintiffs' failure to serve a timely notice of claim. In support of this argument, plaintiffs rely on a case that considered a claim under New York Education Law § 3813(2-a). *See Bloom v. New York City Bd. of Educ.*, No. 00 Civ. 2728, 2004 WL 639613 (HBP), (S.D.N.Y. March 30, 2004) (noting that, under N.Y. Educ. Law § 3813(2-a), "New York State courts have consistently allowed filing late notice of claims where defendants have had actual knowledge of the facts constituting plaintiffs claims . . . and there was no evidence of prejudice to defendant"). Although the statute considered in *Bloom* has no bearing on plaintiffs' claims, the Court construes plaintiffs' "equitable estoppel" argument as arising from an analogous provision of Section 50-e. Plaintiffs' argument regarding "actual notice" would be germane to an application under Section 50-e(5), which provides that

> In determining whether to grant [an] extension, the court shall consider, in particular, whether the public corporation . . . acquired actual knowledge of the essential facts constituting the claim within the time specified in [Section 50-e(1)] or within a reasonable time thereafter. The court shall also consider all other relevant facts and circumstances, including whether the claimant failed to serve a timely notice of claim by reason of his justifiable reliance upon settlement representation . . .; whether the claimant in serving a notice of claim made an excusable error concerning the identity of the pubic

corporation against which the claim should be asserted; and whether the delay in serving the notice of claim substantially prejudiced the public corporation in maintaining its defense on the merits.

Upon consideration of these factors, the Court finds that, although defendants had notice of some facts relating to plaintiffs' claims, the prior contract resolution proceedings did not supply actual notice of the essential facts of plaintiffs' state law claims. Specifically, the Court finds no basis to conclude that the prior proceedings provided actual notice of plaintiffs' assertions that defendants had, in fact, "freezed" plaintiffs' wages because of their political affiliations and/or age. *Cf. Bloom*, 2004 WL 639613, at *7 ("Concrete evidence of the [defendant's] knowledge is established through numerous letters between plaintiff and [defendants] regarding plaintiff's claim . . . . The issues raised in these letters are the same issues which plaintiff presents here."). Therefore, after also examining "all other relevant facts and circumstances" listed in Section 50-e(5), the Court finds that defendants are not estopped from objecting to plaintiffs' failure to serve a timely notice of claim, and that, even if plaintiffs had requested leave to file late notice, that request would be denied.

### V. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss the complaint is granted in part and denied in part. Defendants' motion as to plaintiffs' due process claims under Section 1983 is granted and those claims are dismissed. Defendants' motion as to plaintiffs' conspiracy claims under Sections 1985 and 1986 is granted and those claims are dismissed. Defendants' motion as to plaintiffs' state law claims is granted and those claims are also dismissed. Defendants' motion as to plaintiffs' remaining claims under Section 1983 is denied. The parties shall proceed with discovery forthwith, in accordance with the individual rules of Magistrate Judge Arlene R. Lindsay.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: December 6, 2006
Central Islip, New York

* * *

The attorneys for plaintiffs are Steven A. Morelli and William Matthew Gosh, Esqs., of Leeds Morelli & Brown P.C., One Old Country Road, Suite 347, Carle Place, New York 11514, and Matthew Scott Porges, Esq., 264 17th Street, Second Floor, Brooklyn, New York 11215. The attorneys for defendants are Barbara E. Van Riper and Joady Benjamin Feiner, Esqs., of the Office of the Nassau County Attorney, One West Street, Mineola, New York 11501.